■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JESUS AGUILERA, Appellant.—Judgment, Supreme Court, New York County (Robert M. Haft, J., on the suppression motion; Dennis Edwards, J., at trial), rendered October 10, 1985, convicting defendant, after jury trial, of murder in the second degree, and sentencing him to 25 years to life imprisonment, to run consecutively to any prison time owed on prior convictions, unanimously affirmed.

In a series of custodial interrogations at the 48th Precinct in the Bronx, over a period of about 20 hours on February 16-17, 1982, defendant confessed to involvement in two separate murders, one committed in the Bronx and the other committed later in Manhattan. The first substantive interview ended with a written statement to the police. The second, commenced 4½ hours later, resulted in a videotaped statement to a New York County Assistant District Attorney. The third, commenced still two hours later, yielded a videotaped statement to a Bronx County Assistant District Attorney. Each segment was preceded by a separate advisement, acknowledgment and waiver of rights.

In the Bronx County prosecution, defendant, although declining to testify at the hearing, sought suppression of his statements as pertained to the Bronx murder. While the videotaped confessions may each have focused upon the particular crime of interest to that prosecutor, the suppression court (Frank Blangiardo, J.) necessarily considered all three statements in reviewing the signed statement and the two videotapes. The facts were somewhat interrelated, in that defendant asserted that he had committed each homicide on the orders of one Armando, for pay, and that the money received for the Bronx murder was used to buy an automobile which was later used in the Manhattan murder.

The thrust of defendant's Bronx suppression motion was that his confession to that crime was involuntary, the product of coercion. Specifically, counsel pointed out the length of

defendant's incarceration over the course of the three interrogations, and his statement to the New York County Assistant District Attorney at the close of segment #2 that he "d[id]n't want to continue" the interrogation on the Manhattan crime. Counsel argued that the Bronx County Assistant District Attorney, at the commencement of segment #3, should have reminded defendant, before taking a fresh statement on the Bronx crime, that he had already told the New York County Assistant District Attorney, two hours earlier, that he did not wish to say anything more, and should have given him an opportunity, on the record, to withdraw his demand to terminate further interrogation. The suppression court rejected defendant's assertion of any coercion or involuntariness, concluding that the procedure followed by the police was "legally and properly conducted and that this defendant was advised of his rights on a number of occasions and knowingly and voluntarily waived such rights and made the statements presently before us" (emphasis added). A jury subsequently found defendant guilty as charged, and he was sentenced to 20 years to life imprisonment. We affirmed that judgment unanimously in 1991 (172 AD2d 234, *lv denied* 78 NY2d 1073).

The Manhattan murder case went to trial in 1984. Prior to trial, defendant moved to suppress his inculpatory statements. The court denied a *Huntley* hearing on the ground that defendant was collaterally estopped from raising issues previously raised in the Bronx proceeding: "The defendant had the full opportunity to litigate constitutionality of his statements which includes the statements that the People are going to offer at trial here. The suppression court in Bronx County denied the motion to suppress the defendant's statements and that ruling is binding upon the defendant".

The first trial ended with a hung jury. At the retrial, which was held in 1985, defendant took the stand and testified that he had been subjected to coercive treatment during the 20 hours following his arrest. Specifically, he testified that he was confined to close quarters; denied food, drink or bathroom facilities; tossed into cold showers while still clothed; denied the right to legal counsel, or even to make a telephone call; and that the statements he made were beaten out of him. In rebuttal, police detectives were recalled to the stand for specific testimony concerning defendant's fair treatment while in custody.

The sole issue on appeal is the denial, on collateral estoppel grounds, of a *Huntley* hearing to challenge the voluntariness

of defendant's statements. We agree with the correctness of that ruling.

While utilized more sparingly outside the civil arena where it developed, the doctrine of collateral estoppel is nonetheless applicable in criminal proceedings *(People v Berkowitz,* 50 NY2d 333, 344). The test, as applicable here, is simply whether the party against whom the doctrine is invoked has been afforded a full and fair opportunity to litigate the issue in question *(supra,* at 347; *Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, 71). Defendant had such an opportunity at the Bronx *Huntley* hearing. The fact that he chose not to testify at that hearing is of no moment. Defense counsel clearly availed himself of that opportunity in arguing the issue of coercion and voluntariness of the series of statements. The issue was thus foreclosed in the New York County proceeding, because it was identical to the issue raised in the Bronx, based upon the taking of the same set of statements. Defendant has not indicated the substance of any new evidence that was not already before the suppression court in the Bronx proceeding.

Defendant cites *People v Plevy* (52 NY2d 58) for the proposition that his failure to testify at the Bronx *Huntley* hearing left him with somewhat less than a full and fair opportunity to litigate the issue of the voluntariness of his statements. *Plevy* involved contested statements underlying the validity of a set of search warrants in two separate but related prosecutions, for murder and burglary. The defendant chose not to testify at a *Mapp* hearing in the former case, and then sought, over the People's objection of issue preclusion, a similar hearing in connection with his burglary case. The Court of Appeals held that the necessity for a hearing was obviated by the existence of other admissible evidence in the warrant application, aside from the contested statements. In dictum, a majority of the court opined that were it not for this independent basis for the warrants, the defendant might indeed have been entitled to a separate suppression hearing on the burglary prosecution because he had had legitimate reason to elect not to give preliminary testimony in the murder case. (In the instant appeal, of course, the analogy does not hold, because defendant was charged with murder in *both* cases.) In a concurring opinion, two Judges dissociated themselves from that dictum. The admissibility of the statements, Judge Fuchsberg noted, had been fully litigated and clearly adjudicated against defendant at the first hearing, and that determination became " 'procedurally final' " *(supra,* at 69) upon the Appel-

late Division's affirmance of the judgment on appeal, and the subsequent denial of leave to appeal to the Court of Appeals. (The history of the instant case is identical in that respect.) "[T]here is no good reason why the effect of this adjudication should be any less binding for purposes of collateral estoppel simply because the defendant chose not to testify at the hearing." (52 NY2d, *supra,* at 69.)

Furthermore, *Plevy (supra)* involved seizure of physical evidence pursuant to search warrants, a ruling on the legitimacy of which becomes procedurally binding at trial *(see, People v Hamlin,* 71 NY2d 750), whereas the voluntariness of statements can always be relitigated by the defendant at trial, regardless of the disposition on a *Huntley* motion (CPL 710.70 [unnumbered final para]; *People v Huntley,* 15 NY2d 72). Indeed, defendant *had* his "second bite at that apple" (Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 710.70) at his trial herein. Having thus litigated the question, *with* his testimony, at the New York County trial, he is certainly not entitled to still another hearing on the issue. Concur—Rosenberger, J. P., Wallach, Kupferman, Asch and Rubin, JJ.